Supreme Court—General Term—Fifth Department.

*October*, 1885.

## PEOPLE *v.* SULLIVAN.

INDICTMENT—PLEADING NAME OF CRIME—ASSAULT—INTENT —PENAL CODE, § 218, SUB. 4—JUDGE'S CHARGE.

The name of the crime in an indictment is a mere matter of form, which may or may not be stated, and if stated incorrectly it does not vitiate

or control the character of the crime as against specific allegations of fact in the indictment constituting it. Accordingly, where the crime was designated in the indictment as assault in the second degree and the facts alleged constituted assault in the first degree : *Held*, good as an indictment for assault in the first degree, and, therefore, sufficient to uphold a conviction of assault in the second degree.

To support a conviction of assault in the second degree under subdivision 4, section 218, Penal Code, there must be shown an intent to do bodily harm, and, also, an intent to use for that purpose the weapon, other instrument, or thing referred to in the indictment and proof.

In this case complainant testified that when she was in bed in defendant's house, on a certain night, he said to her that she must go before a justice of the peace and make oath that the child with which she was pregnant was that of a certain man named by defendant; that she refused, and defendant said if she did not do so he would kill her, would cut her throat; that he dragged her to the pantry door, got the butcher knife and drew it as if to cut her throat, but did not injure her otherwise than to choke her so as to leave marks on her neck; that she finally promised and he let her go, and that she went to bed and slept till morning. These statements were contradicted by defendant's testimony. The jury found defendant guilty of assault in the second degree : *Held*, upon a review of the charge, that as it fairly required the jury to find the defendant guilty of assault in the second degree if they believed complainant's statement and failed to find intent to kill, a new trial should be ordered; that the question of intent to use the weapon should have been submitted to the jury.

APPEAL by defendant from judgment of conviction of assault in the second degree in the Court of Sessions of Ontario county, Hon. WILLIAM H. SMITH presiding.

The indictment was found February 15, 1884, in the Court of Oyer and Terminer of said county, and contained two counts. The first named the offense "assault in the second degree" on Hattie Johnson *alias* Hattie Sullivan, and alleged that the defendant feloniously made on her an assault with a deadly weapon with intent her to kill. The second alleged an assault on her which comes within the definition of an assault in the third degree. The defendant's demurrer to the indictment was overruled; he went to trial on the plea of not guilty; the jury rendered a verdict of guilty of assault in the second degree, and by the judgment of the court he was sentenced to imprisonment for the term of five years.

The facts and exceptions appear in the opinion.

*J. .P. Faurot* and *Edwin Hicks*, for appellant.

*O. C. Armstrong*, district attorney, for the people, respondent.

BRADLEY, J.—The evidence to support the charge is in the testimony of the person upon whom the assault is alleged to have been made. It appears that the defendant in January, 1883, was an unmarried man and farmer, residing in the town of Canadice, in Ontario county; that Hattie Johnson, then in her twenty-third year of age, went there and did the work in his house, and remained there until October 21, when she went with him to her father's, and has not since returned to the defendant's house; that while living at the defendant's house she became *enciente* and gave birth to a child in April following. She testified that about 11 o'clock on the night of October 11, 1883, when she was in bed, the defendant said to her she must go before Andrews, a justice of the peace, and make oath that the child with which she was then pregnant was that of a man named by him; that she refused, and he said if she did not he would kill her, would cut her throat; that he dragged her to the pantry door, got the butcher knife and drew it as if to cut her throat, but did not injure her otherwise than to choke her some, so as to leave marks on her neck; that she finally promised, and he let her go, and that she went to bed and slept until morning. All which was unqualifiedly contradicted by the testimony of the defendant.

This statement of the witness Hattie was remarkable, and the jury, in view of all the circumstances, were at liberty to find that it was unreasonable and unreliable. There was evidence tending to prove that when it was arranged in January that she should go to the defendant's place to stay, it was understood that they should then be married; that it was postponed until June 12, when they went to Bloods Station, in the county of Steuben, and the marriage ceremony was there performed at a hotel by a person procured by the defendant, and introduced by the name of Elder Lewis, and that after that they cohabited as husband and wife. The fact of this marriage is supported by her testimony, and is contradicted by the defendant. She

says that after this assault she remained at defendant's October 12, 13 and 14, and on the 15 they went together to her father's, more than ten miles distant, stayed over night, returned together the next day to the defendant's house; that all was socially pleasant between them; that on the 17 and 18 she was at his house, and no interruption to their pleasant relation appears; that on the 19 there was something not agreeable, but quite the contrary, to which it may not here be necessary to refer; that on the 20 they were picking peaches, and went away together, and she sold them, then went to see Justice Andrews and then to her father's, where she afterwards remained.

It is difficult to give to her conduct subsequent to the 11th of October any consistency with her statement of the transaction of that night, unless it be found in and supported by the fact that she believed herself the wife of the defendant, which is a circumstance, with others, for the consideration of the jury. There is some evidence other than that in the testimony of Hattie tending to prove that the defendant said they were married, which he also contradicts. Whether the transaction which she relates occurred was a question for the jury, and their finding depended upon credibility so much that it was their peculiar province to settle that question. And although by the record before us, as the testimony is there presented, there may seem to be much doubt about the truth of the charge upon all the testimony, yet there are certain elements going to produce conviction of the truth or falsity of the relation given by witnesses on a trial, which can be appreciated only by seeing the witnesses and observing their appearance and manner of giving testimony. Thus when the question is one of credibility of witnesses, it is difficult and unusual to interfere in that respect with the verdict of a jury, who have those superior opportunities to judge and determine which of the witnesses are and which are not entitled to credit, and where the truth is, unless there is something tending to show that they were influenced by prejudice or by causes which may have interrupted impartial deliberation. Nothing appears here to take from the jury a purpose to fairly reach by their verdict the truth deliberately and impartially found by them as required.

The defendant's counsel contends that the indictment is bad, because it designates the crime on the first count as assault in the second degree, and the facts alleged in it do not support assault in that degree, but in the first degree; that no conviction could be had under it in the second degree, for the reason that the facts alleged do not constitute that crime; and that the proof does not authorize conviction in the second degree, but if in any, in the first degree.

The misnomer of the crime in the indictment is not so important as to govern when it does not correspond with the crime shown by the facts alleged. The latter, in such case, control the character of the crime presented by the indictment. The statute prescribes the requisites of the crime in those degrees (*Penal Code,* §§ 217, 218), and what the indictment "must" contain (*Code Crim. Pro.* § 275); also what "may be substantially" the form of the indictment, and sets it forth, in which is a place designated for the name of the crime "if it have one," &c. *Code Crim. Pro.* § 276. The name of the crime is mere matter of form, which may or not be stated, and if it is stated incorrectly, it does not vitiate or control the character of the crime as against the allegations constituting it. *Code Crim. Pro.* § 284; *subds.* 6, 7, § 285. The charge of the crime in the first degree permits conviction in the second. *Penal Code,* § 35; *Code Crim. Pro.* § 444.

Conviction of assault in the first degree depended on intent to kill. The evidence did not require the jury to find that intent if they found the assault was made with a deadly weapon. And if they failed to find that intent, they might, in such case, convict of assault in the second degree. The evidence was such, and sufficient to warrant the conviction of the defendant of assault in the second degree. One and an important element of crime is intent. To constitute a criminal assault and intent to do bodily harm, or by violence to insult, is requisite. *Am. Crim. Law,* § 1241; Hays *v.* People, 1 *Hill,* 351; People *v.* Hale, 1 *N. Y. Crim. Rep.* 532. That is a question for the jury under proper instructions from the court, and it is no less so when in it is involved the use of a weapon. An inquiry arises here, whether the instructions of the court to the jury so

far directed them, in that respect, as to unduly restrict their consideration of that question as one of fact to the prejudice of the defense. The court charged the jury: "If you come to the conclusion that her story is true, .... and that he did not, under all the circumstances, intend to take her life, then you may convict him of assault in the second degree. ... And if you come to the conclusion .... that it was merely a threat for the purpose of frightening her into doing certain things; that, in fact, although she did not do the thing, yet he did not intend to take her life, notwithstanding the fact that he threatened to do so, then, as I say to you, your verdict will be special, to wit: guilty of assault in second degree." Then further on the court charges, that if the jury find that the transaction occurred as complainant related it, and was done by the defendant to compel her to swear the child on another, and, if he failed, he did not intend to take her life, but did it to frighten her, "then you will say there was not an attempt to kill, and if that weapon was used as she describes it to have been used, then, although you say he did not intend to kill, yet, if that is eliminated, it would be assault in the second degree. .... If, on the contrary, you find there was no instrument and there was an assault, then you have a right to render a verdict of guilty of assault." The exception taken was "to that part of the charge in which the jury were instructed that, if they consider that the testimony of the principal witness does not show the defendant did not intend to kill, they might find a verdict of assault and battery in the second degree." If the exception taken fails to be sufficiently specific to distinctly present the question, this court may and should grant a new trial, if it is apparent that the defendant may have been materially prejudiced by the error. *Code Crim. Pro.* § 527.

The charge of the court was such as to fairly require the jury to find the defendant guilty of assault in the second degree, if they found that the statement of Hattie was true, and failed to find intent to kill, and they may have been led to understand that they necessarily had nothing to find in respect to the intent of the defendant, further than a want of intent to kill, to produce their verdict of guilty of assault in the second

degree. The statute under which the conviction of the defendant of assault in that degree could be had, provides that a person who, under circumstances not amounting to assault in the first degree, " willfully and wrongfully assaults another by the use of a weapon or other instrument or thing likely to produce grievous bodily harm," is guilty of assault in the second degree. *Penal Code,* § 218, *subd.* 4. The statute does not take from the crime the necessity for intent. As well as the intent to do bodily harm, the intent must exist to use for that purpose, the weapon, other instrument or thing. People *v.* Griffin, 27 *Hun,* 595; O'Leary *v.* People, 4 *Park.* 187.

In this case, to bring the act of the defendant within the statute, his intent to use, in the assault, the weapon he had at the time, was required. It is not important, for that purpose, whether his intent was unqualified or depended on her refusal to promise to do what he required of her. In either event the character of the assault would have been the same. A threat is usually very strong, and ordinarily should be controlling evidence with the jury of purpose and intent, when it accompanies an act under circumstances to which it is properly applicable. That, however, is governed somewhat by the circumstances under which, as well as by the character and nature of the transaction in which it is made. Unless the defendant in some event intended to use the knife in the assault in such manner as might produce bodily harm, he was not guilty of assault in the second degree; and whatever view the jury may have taken of it, if that question had been left to them, the circumstances of this case (to which it is unnecessary to refer), were not such as to conclusively establish such intent on the part of the defendant. They would have been fairly justified in finding that intent in support of conviction of the offense of which they found him guilty. But that question was substantially taken from them by the court, and they were permitted to find him guilty of assault in the third degree only in the event they found that he had no instrument. This was error, which may have seriously prejudiced the defendant, and cannot be disregarded. In other respects we observe no exception requiring consideration.

The judgment and conviction should be reversed and new trial ordered, and proceedings remitted to Court of Sessions of Ontario county.

SMITH, P. J., BARKER and HAIGHT, JJ., concur.

NOTE.—The Court of Appeals dismissed the appeal from this decision, upon the ground that the order of the General Term did not comply with People *v.* Boas, 1 *N. Y. Crim. Rep.* 287, and People *v.* Poucher, 3 *Id.* 56..